IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-00361-NYW

DANIEL ROGER GOODWIN,

    Applicant,

v.

PHILIP J. WEISER, and
MOSES STANCIL,

    Respondents.

---

## MEMORANDUM OPINION AND ORDER

---

Applicant Daniel Roger Goodwin ("Applicant" or "Mr. Goodwin"), has filed (1) an amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "First Amended Application"), [Doc.23]; (2) a second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Second Amended Application"), [Doc 43]; and (3) a third amended pleading captioned "Petition For Relief From a Conviction or Sentence by a Person in State Custody" (the "Third Amended Application"),[1] [Doc. 54]. Mr. Goodwin challenges the validity of his conviction and sentence in Pueblo County District Court, Case No. 2014CR1287. *See, e.g.*, [Doc. 23 at 2]. Before Mr. Goodwin filed the Third Amended Application, Respondents filed an Answer, [Doc. 44], to the First

---

[1] Applicant initiated this action on February 5, 2024, but was subsequently ordered several times to amend his pleading. *See* [Doc. 1; Doc. 3; Doc. 8; Doc. 18]. The Amended Application was filed on July 1, 2024. [Doc. 23]. The Second Amended Application was filed on December 2, 2024. [Doc. 43]. The Third Amended Application was filed on April 18, 2025.

and Second Amended Applications.

After reviewing the record, including the First Amended Application, the Second Amended Application, the Third Amended Application, the Answer, and the state court record, the Court respectfully concludes that Mr. Goodwin is not entitled to relief.

## BACKGROUND

Mr. Goodwin was convicted by a jury of sexually assaulting his fifteen-year-old grandniece. [Doc. 29 at 2; Doc. 29-4 at 2]. He is serving an indeterminate sentence of eight years to life in the custody of the Colorado Department of Corrections. *See* [Doc. 29-1 at 4].

Mr. Goodwin asserts nine claims for relief in the First Amended Application. *See generally* [Doc. 39]. In an order entered on October 24, 2024 ("October 24 Order"), the Court dismissed eight of the claims. *See* [Doc. 39]. The Court also ordered Respondents to file an Answer that fully addresses the merits of the remaining claim—claim 4 in the First Amended Application—in which Mr. Goodwin contends the prosecution failed to disclose a police report in a timely manner in violation of his due process rights and *Brady v. Maryland*, 373 U.S. 83 (1963). [*Id.* at 14]. The police report in question was prepared by an officer who tested a swab of a section of the victim's mattress for seminal fluid, the results of which were negative. *See* [Doc. 29-4 at 4–5].

The Court's October 24 Order also addressed Mr. Goodwin's Motion to Expand the Record. *See* [Doc. 38]. The Court construed the Motion to Expand the Record as a Motion to Amend and directed Respondents to respond in their Answer to any new arguments Mr. Goodwin raised in the motion. [Doc. 39 at 14].

Mr. Goodwin then filed another Amended Application for a Writ of Habeas Corpus

2

(the "Second Amended Application").  [Doc. 43].  The specific claims Mr. Goodwin asserts in the Second Amended Application are difficult to discern.  Mr. Goodwin reiterates his *Brady* claim premised on the failure to timely disclose a police report from the officer who tested a swab of the victim's mattress for seminal fluid.  [*Id.* at 4–5]. According to Respondents, Mr. Goodwin also raises a new claim in the Second Amended Application, contending his right to due process was violated by the prosecution's failure to preserve the mattress swab referenced in the police report.  [Doc. 44 at 3]; *see also* [Doc. 43 at 4–5].  Mr. Goodwin does not dispute that characterization of the Second Amended Application and, construed liberally, the Court agrees with that characterization of Mr. Goodwin's new claim.

Respondents filed the Answer shortly after Mr. Goodwin filed the Second Amended Application.  On February 3, 2025, the Court ordered Respondents to serve another copy of the Answer on Mr. Goodwin, and Mr. Goodwin was advised that he may file a reply to the Answer within thirty days of service.  [Doc. 49].  On February 4, 2025, Respondents filed a Certificate of Service, [Doc. 50], indicating a second copy of the Answer was mailed to Mr. Goodwin that day.

Mr. Goodwin did not file a reply within the time allowed.  He did initiate a new habeas corpus action challenging the same conviction, raising claims that are substantially similar to the claims in the Second Amended Application.  *See Goodwin v. Weiser*, No. 25-cv-00693-LTB (D. Colo. Mar. 3, 2025), Dkt. No. 1.  Mr. Goodwin also asked this Court to consider the pleading filed in the new action.  *See* [Doc. 51].  This Court declined to do so, in part because Mr. Goodwin's claims in the new action are substantially similar to the claims in the Second Amended Application.  *See* [Doc. 52].

On April 11, 2025, the new action was dismissed without prejudice pursuant to Mr. Goodwin's notice of voluntary dismissal. *Goodwin v. Weiser*, No. 25-cv-00693-LTB (D. Colo. Apr. 11, 2025), Dkt. No. 5. A week later, Mr. Goodwin filed another petition (the "Third Amended Application") in this case. [Doc. 54]. The Third Amended Application raises the same claims Mr. Goodwin raised in the new action, which are substantially similar to his claims in the Second Amended Application.[2] *Compare* [Doc. 43 at 4–5], *with* [Doc. 54 at 15–16].

As it stands, two claims remain before the Court in this action. First, Mr. Goodwin asserts a *Brady* claim in which he contends the prosecution failed to disclose a police report in a timely manner. Second, Mr. Goodwin asserts a related due process claim in which he contends the prosecution failed to preserve the mattress swab referenced in the police report. Additional facts pertinent to these claims are set forth below.

## STANDARDS OF REVIEW

The Court must construe the papers filed by Mr. Goodwin liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court cannot and does not act as an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued

---

[2] Generally, an applicant must obtain permission from the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") before filing a second or successive application for a writ of habeas corpus. 28 U.S.C. § 2244(3)(A). A district court lacks jurisdiction over a second or successive application filed without such permission. *See Berryhill v. Evans*, 466 F.3d 934, 938 (10th Cir. 2006). Here, because the claims included in the Second and Third Amended Applications are substantially the same, this Court does not construe the Third Amended Application as a second or successive application for a writ of habeas corpus.

4

with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Goodwin bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Goodwin seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at 407–08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.  A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong."  *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted).   Furthermore,

> evaluating whether a rule application was unreasonable requires

> considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Goodwin bears the burden of rebutting the presumption by clear and convincing evidence. The presumption

of correctness applies to factual findings of the trial court as well as state appellate courts. See *Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. See *Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

## ANALYSIS

### I.   *Brady* Claim

Mr. Goodwin argues that the prosecution failed to disclose an exculpatory police report in a timely manner in violation of due process and *Brady v. Maryland*, 373 U.S. 83 (1963). By way of background, the charges against Mr. Goodwin were based on two incidents:  one in the bathroom of the victim's home, and a prior incident in Mr. Goodwin's motorhome. See [Doc. 29-4 at 2]. The police report in question relates to a third alleged incident in the victim's home.

After the jury's verdict, Mr. Goodwin filed a motion for a new trial arguing "that the late disclosure of a police report amounted to a violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963)." [Doc. 29-4 at 3]. Mr. Goodwin then raised the *Brady* claim on direct appeal, arguing the trial court erred in denying his motion for a new trial. [*Id.* at 2]. The Colorado Court of Appeals described the factual background for the claim as follows:

> At trial, the lead detective testified that, during the investigation of the bathroom assault, the officers learned of a possible prior assault in the victim's home, on her mattress. The officers collected a small portion of the mattress and tested it for seminal fluid, but the test results were negative and the officers did not pursue that part of the investigation. The detective testified that a fellow officer had prepared a report about the testing of the mattress.
>
> The report, however, had not been disclosed to the defense. The

prosecutor promptly obtained the report and provided it to defense counsel. The court then asked counsel how he wanted to proceed:

> So, [defense counsel], we're on the record now. Pictures are coming. You have the report. It's a one-page, three-paragraph report.
>
> . . .
>
> So you can certainly cross-examine [the detective] about this report if you want to. [The officer who prepared the report] will be here soon if you want to call her to the stand to testify. Or if you want to look at the pictures and decide whether you want to use them or how you want to use them, that's fine too.
>
> . . .
>
> I'll give you an opportunity to talk to [the second officer] out in the hallway and have an opportunity to go over the report with her.
>
> . . .
>
> Do you want to finish this line of questioning with [the detective] or do you want to wait until you get [the second officer's] interview – you talk to her and see the pictures? How do you wish to proceed?

Defense counsel told the court that he preferred to finish questioning the detective and then, when the second officer arrived, he would "go ahead and inquire." The court responded, "We'll proceed in that fashion then."

When the second officer arrived, the court assured counsel, "I want to give you sufficient time to talk to her," and suggested that the jury break for lunch. Defense counsel agreed that the proposed schedule made "a lot of sense." After the lunch break, the court asked counsel, "Did you get the photos and the report taken care of and get your interview done?" Counsel replied, "We did. We both interviewed her at the same time. I feel very comfortable to put her on the stand." Defense counsel then called the second officer as a witness and questioned her about her role in the investigation.

Shortly thereafter, defense counsel recalled the victim to testify. The victim had not previously testified about any alleged sexual assault on the

9

mattress.  Counsel did not ask her any questions about the allegation. [*Id.* at 4–6].

Suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87.  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  And the *Brady* rule encompasses evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

"Prejudice satisfying the third element exists 'when the suppressed evidence is material for *Brady* purposes.'" *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (per curiam) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)).  Generally, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (quotation marks omitted).  A reasonable probability of a different result exists "when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434 (quotation marks omitted).  The Court must evaluate whether undisclosed evidence is material in the context of the entire record. *See United States v. Agurs*, 427 U.S. 97, 112 (1976).

The Colorado Court of Appeals recited the correct standards for addressing a *Brady* claim and rejected Mr. Goodwin's *Brady* claim for the following reasons:

> As an initial matter, we are not convinced that the prosecution

"suppressed" the report.  *See United States v. Agurs*, 427 U.S. 97, 103 (1976) (A *Brady* violation "involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.").  But even if we assume that delayed disclosure equates to "suppression," Goodwin cannot show that the information in the report was exculpatory or material.

According to Goodwin, the evidence was exculpatory because the report suggests that the victim made an unsubstantiated claim of a third assault on the mattress.  He says that if he had obtained the report earlier, he could have used it to impeach the victim and show that her other allegations were likewise incredible.

First, the mere fact that a portion of the mattress tested negative for seminal fluid does not establish, or even suggest, that the victim fabricated a story about a third sexual assault.  "[E]vidence is not exculpatory because it is not alone conclusive of criminal conduct."  *People v. Braunthal*, 31 P.3d 167, 174 (Colo. 2001).

Second, any impeachment value of the evidence was not substantial.  Even without the benefit of the police report, defense counsel thoroughly cross-examined the victim, pointing out inconsistencies between her statements to police and her testimony at trial.  Indeed, in his motion for a new trial, Goodwin contended that the victim's credibility was so compromised by cross-examination that "no reasonable person could" have believed her version of events.  *Mendez*, ¶ 43 (no prejudice from discovery violation where defense counsel nonetheless thoroughly impeached the witness).  In any case, after disclosure of the police report, defense counsel had an opportunity to cross-examine the victim concerning a possible allegation of a sexual assault on the mattress.  He declined to ask any questions.

As for materiality, Goodwin contends that, if the prosecution had timely disclosed the report, he could have conducted further tests on the mattress and the testing "might have yielded results actually matching someone else."  That theory of materiality is entirely speculative.  The police report confirmed that a test for seminal fluid on the mattress was negative; in other words, the mattress possessed no inculpatory or exculpatory value.  From there, Goodwin hypothesizes that further testing might have led to an alternate suspect and changed the outcome of the trial.  But "[s]peculative assertions regarding the possible exculpatory effect had the evidence been available for testing are not sufficient to" state a due process violation.  *People v. Scarlett*, 985 P.2d 36, 39 (Colo. App. 1998).

We conclude that the information in the police report was neither

11

> exculpatory nor material, and Goodwin has therefore failed to establish a constitutional violation.

[Doc. 29-4 at 9–12].

Mr. Goodwin is not entitled to relief on the *Brady* claim under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result.   See *House*, 527 F.3d at 1018.

Nor does Mr. Goodwin argue that the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented.   Therefore, he is also not entitled to relief under § 2254(d)(2).

Finally, Mr. Goodwin fails to demonstrate the state court's rejection of his *Brady* claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.   Most significantly, the Colorado Court of Appeals reasonably concluded that Mr. Goodwin's speculation about the possibility of discovering an alternate suspect from additional testing of the mattress is not sufficient to demonstrate the evidence was material under *Brady*.   See *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995) (per curiam) (finding that habeas petitioner's "mere speculation" that undisclosed polygraph results "might have led respondent's counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized" did not meet "the standards we have established" under *Brady*); *Banks v. Reynolds*, 54 F.3d 1508, 1519 (10th Cir. 1995) ("Our materiality review [under *Brady*] does not include speculation.").

For these reasons, Mr. Goodwin is not entitled to relief with respect to his *Brady* claim.

### II.     Failure to Preserve Evidence

Mr. Goodwin contends in his new claim that his right to due process was violated because the prosecution failed to preserve the mattress swab referenced in the police report that is the subject of the *Brady* claim.   This Court respectfully concludes that Mr. Goodwin is not entitled to relief.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).   The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.   *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).   Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."   *Dever*, 36 F.3d at 1534.

"The exhaustion requirement is not one to be overlooked lightly," and "[p]rinciples of comity and federalism demand that the requirement be strictly enforced."   *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995) (cleaned up).   A state prisoner bringing a federal habeas corpus action bears the burden of showing he has exhausted all available state remedies for each particular claim.   *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Respondents contend Mr. Goodwin failed to exhaust state remedies for his new claim because he did not raise the claim either on direct appeal or on appeal from the denial of his postconviction Rule 35(c) motion.   [Doc. 44 at 15].   Respondents concede

that the new claim is similar to the *Brady* claim discussed above that was raised in the Colorado Court of Appeals on direct appeal. [*Id.*]. But the Court agrees with Respondents that the claims are not the same. The *Brady* claim discussed above is premised on the mid-trial disclosure of a police report that referenced a swab of the victim's mattress. *See* [Doc. 43 at 4]. In the new claim, Mr. Goodwin contends his federal constitutional rights were violated based on a failure to preserve the mattress swab. *See* [*id.* at 5].

The Court's review of the state court briefs confirms that Mr. Goodwin did not fairly present to the state courts, either on direct appeal or on appeal from the denial of his postconviction Rule 35(c) motion, the new claim premised on the alleged failure to preserve the mattress swab. *See* [Doc. 29-2; Doc. 29-3; Doc. 29-6; Doc. 29-7]. However, the Court may not dismiss the new claim for failure to exhaust state remedies if Mr. Goodwin no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351. And the Court agrees with Respondents that Mr. Goodwin no longer has an adequate and effective state remedy available to him to raise the new claim. Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure provides that, with limited exceptions not applicable to Mr. Goodwin, the state court must dismiss any claim that could have been raised in a prior appeal or postconviction proceeding. Here, Mr. Goodwin could have raised the new claim in state court on direct appeal. But the claim is nevertheless barred on the basis of procedural default.

Federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice."

14

*Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Even if an unexhausted claim has not actually been raised and rejected by the state courts on a procedural ground, the claim is subject to an anticipatory procedural default if it is clear that the claim would be rejected because of an independent and adequate state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See id.* at 730.

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). A state procedural ground is adequate if it "was firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (quotation omitted).

Mr. Goodwin does not argue that Rule 35(c)(3)(VII) of the Colorado Rules of Criminal Procedure is not an independent and adequate state procedural rule. In any event, the Court finds that the rule is independent because it relies on state rather than federal law. Rule 35(c)(3)(VII) is also adequate because it is applied evenhandedly by Colorado courts. *See, e.g., People v. Vondra*, 240 P.3d 493, 494–95 (Colo. App. 2010) (applying Rules 35(c)(3)(VII) to reject claims that were or could have been raised in a prior proceeding); *see also LeBere v. Abbott*, 732 F.3d 1224, 1233 n.13 (10th Cir. 2013) (noting that several unpublished cases have indicated Colorado's rule barring claims that could have been raised previously is an independent and adequate state ground precluding federal habeas review).

If Mr. Goodwin returned to state court to present the new claim, the claim would be rejected because of an independent and adequate state procedural rule. Thus, the

claim is subject to an anticipatory procedural default and cannot be considered unless Mr. Goodwin demonstrates cause and prejudice or a fundamental miscarriage of justice. *See Jackson*, 143 F.3d at 1317. But Mr. Goodwin makes no argument to demonstrate either cause and prejudice or a fundamental miscarriage of justice. Therefore, the new claim is procedurally barred and must be dismissed for that reason.[3]

## CONCLUSION

For the reasons stated herein, it is **ORDERED** that

(1) The first amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, [Doc. 23]; the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, [Doc. 43]; and the Petition For Relief From a Conviction or Sentence by a Person in State Custody, [Doc. 54], are **DENIED**;

(2) The Motion Requesting Status Update, [Doc. 56], is **DENIED as moot**;

(3) This case is **DISMISSED with prejudice**;

(4) There is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

(6) The Clerk of Court is directed to mail a copy of this Order to Applicant at the following address:

> Daniel R. Goodwin
> #172771
> Crowley County Correctional Facility (CCCF)
> P.O. Box 100
> 6564 State Highway 96
> Olney Springs, CO 81062-8700

---

[3] Because this Order dismisses the case, Mr. Goodwin's Motion Requesting Status Update, [Doc. 56], is **DENIED as moot**.

DATED:   July 28, 2025

BY THE COURT:

_____
NINA Y. WANG
United States District Judge